**BLISSCRAFT OF HOLLYWOOD,**
**Plaintiff,**

**v.**

**UNITED PLASTIC COMPANY, Marmax Products Corp. and Morris Shapiro, doing business as Great Eastern Housewares Co., Defendants.**

United States District Court
S. D. New York.

Nov. 25, 1960.

Harry Cohen, New York City, for plaintiff.

L. P. Brooks (of Ward, Neal, Haselton, Orme & McElhannon), New York City, for defendants.

SOLOMON, District Judge.

This is an action for unfair competition, design patent infringement, and trade mark infringement, all arising out of defendants' manufacture, sale and use of a polyethylene pitcher.

Plaintiff seeks an injunction and money damages on the theory that defendant United Plastic Company, through the sale of its Steri-lite "Poly Pitcher" decanter, has infringed plaintiff's design patent and plaintiff's unregistered trade mark. Plaintiff also alleges that defendant has been guilty of unfair competition both in the design of its pitchers and in the labels affixed thereto.

Plaintiff, Blisscraft of Hollywood, is a limited California partnership in the business of manufacturing and selling synthetic housewares. In 1954, Charles O. Bliss, one of the partners, designed a decanter which plaintiff commenced to manufacture out of polyethylene and which it advertised under the name "Poly Pitcher", both to the trade and to the general public.

No attempt was made to obtain a registered trade mark on the name, but in the following year Bliss was issued Design Patent No. 174,793, which he subsequently assigned to plaintiff.

The defendant United Plastic Company is a New York partnership, and it, as well as its predecessor, United Plastic Corporation, is engaged in the manufacture and sale of plastics and other types of synthetic household wares.

As early as 1954, United used the term "poly" to describe certain of its household articles made of polyethylene.

In May, 1957, United commenced the sale of its pitchers with a "Poly Pitcher" label. Shortly thereafter, plaintiff learned of such product and immediately changed its label to distinguish it from United's label. Plaintiff also called United's attention to its design patent and trade mark, and requested it to discontinue its alleged acts of infringement and unfair competition. Although United denied that it was infringing any of plaintiff's rights, it agreed to and did discontinue using the name "Poly Pitcher". Several months later, plaintiff commenced this action, not only against defendant United, but also against Marmax Products Corp. and Great Eastern Housewares Co., two of United's jobbers.

Plaintiff in its first cause of action charges that the defendant infringed plaintiff's design patent 174,793, which is an ornamental design for a pitcher or similar article.

Figure 1 of the patent [1] is a perspective view of the pitcher and adequately sets forth its features. This view shows that the pitcher is cylindrical in shape with circular ridges around the body at uniform intervals, with a base or flange at the bottom; an H-shaped handle with finger indentations; a scalloped snap-on lid with an extended pouring spout, and a cap attached to the lid which fits over the spout.

Plaintiff alleges that the patented pitcher has a "form and configuration of distinctive and instantly recognizable ap-

[1] **United States Patent Office**

Des. 174,793
Patented May 24, 1955

174,793
PITCHER OR SIMILAR ARTICLE
Charles O. Bliss, Los Angeles, Calif.
Application October 25, 1954, Serial No. 32,812
Term of patent 14 years
(Cl. D44—21)

To all whom it may concern:

Be it known that I, Charles O. Bliss, a citizen of the United States of America, residing at Los Angeles, in the county of Los Angeles and State of California, have invented a new, original, and ornamental Design for a Pitcher or Similar Article of which the following is a specification, reference being had to the accompanying drawing, forming part hereof.

Fig. 1 is a perspective view of a pitcher showing my new design;

Fig. 2 is a rear elevational view thereof;

Fig. 3 is a fragmentary side elevational view thereof showing the pouring spout closure in an open position; and

Fig. 4 is a top plan view of that shown in Fig. 1.

Both sides of the pitcher have the same appearance.

I claim:

The ornamental design for a pitcher or similar article, substantially as shown and described.

References Cited in the file of this patent

UNITED STATES PATENTS

D. 167,254 Cherry ........................July 15, 1952

OTHER REFERENCES

Housewares Review, July 1953, page 64, Republic Molding Corporation adv., Item #186, "Decanter."

Housewares Review, March 1954, page 105. Plastray Corporation adv., Sealfreeze Food Container.

pearance, said appearance being the result of the pleasing cooperation of a number of nonfunctional design features".

Defendant United asserts invalidity of the patent and non-infringement.

■ A design patent, to be valid, must disclose a design that is "new, original, and ornamental". 35 U.S.C. § 171. However, being new and pleasing enough to catch the trade is insufficient. It must represent an exercise of the inventive faculty, and requires exceptional talent beyond the skill of the ordinary designer chargeable with knowledge of the prior art. International Silver Co. v. Pomerantz, 2 Cir., 1959, 271 F.2d 69, 71; General Time Instruments Corp. v. United States Time Corp., 2 Cir., 1948, 165 F.2d 853, 854; A. C. Gilbert Co. v. Shemitz, 2 Cir., 1930, 45 F.2d 98, 99.

In addition to being new and inventive, the design must also be "ornamental", the product of aesthetic skill, and must embody an artistic conception. Burgess Vibrocrafters v. Atkins Industries, 7 Cir., 1953, 204 F.2d 311.

It must be motivated by ornamental or decorative inventiveness because a design dictated solely by mechanical or functional requirements is not patentable. Gorham Mfg. Co. v. White, 14 Wall. 511, 81 U.S. 511, 20 L.Ed. 731; Hueter v. Compco Corp., 7 Cir., 1950, 179 F.2d 416; Jones v. Progress Industries, Inc., D.C.R.I.1958, 163 F.Supp. 824, 826.

Therefore, the essential questions in this case are whether the particular combination of elements used by Bliss produced (1) a new design which showed invention over the prior art, and (2) an ornamental design not dictated by functional and mechanical requirements of the subject.

■ At the trial, a number of pitchers were admitted in evidence, each of which embodied many of the features contained in plaintiff's pitcher. I find that plaintiff's design exhibited no more creative artistic ability than that of a routine designer in the field and does not amount to invention.

The patent is also invalid on the ground that the novelty, if any, is functional rather than ornamental. The spout cover serves to close the spout opening; the handle and the tapered body make for ease in molding. The finger indentations on the "pistol grip" prevent the pitcher from slipping out of one's hand. The horizontal lines around the body permit measuring and also strengthen the body. The scalloped lower edge of the lid serves to keep the lid on more tightly and to prevent leakage; and the flange or base prevents tipping. Each of these features is basically functional.

The new and pleasing aesthetic impression required to sustain a design patent cannot be merely the natural result of a combination of functional arrangements. Here, the design is clearly dictated by functional or mechanical requirements, and the so-called pleasing effect is merely a by-product. It is therefore invalid.

Plaintiff next contends that defendant United infringed its unregistered trade mark "Poly Pitcher". Defendant United denies that plaintiff has a valid trade mark and states that the name "Poly Pitcher" is merely descriptive and that it has not acquired a secondary meaning.

■ Words which are merely descriptive of the qualities, ingredients or composition of an article cannot be appropriated as a trade mark and are not entitled to protection unless they have acquired a secondary meaning. 15 U.S.C.A. § 1052(e); Sargent & Co. v. Welco Feed Mfg. Co., 8 Cir., 1952, 195 F.2d 929, 933; Le Blume Import Co. v. Coty, 2 Cir., 1923, 293 F. 344, 353.

■ The term "Poly" is widely used in trade and general publications as being synonymous with polyethylene. The Patent Office Trade Mark Trial and Appeals Board, in the case of In re Crown Zellerbach Corporation, 121 U.S.P.Q. 591, refused registration to the applicant's alleged trade mark "Poly Paper" because " 'poly' used in combination with 'paper' is an apt descriptive name for polyethylene coated paper packaging materials; and that it has been used only as such by applicant." The rationale of

this recent well-reasoned opinion is equally applicable to polyethylene pitchers. Here, the word "poly", as used by plaintiff in numerous advertisements of its pitchers and other articles of houseware, shows that it was used in its descriptive sense to denote that they were made from polyethylene,[2] " 'Poly Pitchers' * * * 'made of unbreakable polyethylene' ".

■ I further find that plaintiff failed to prove that the words "Poly Pitchers" acquired a secondary meaning. For a product to acquire a secondary meaning, it must be shown that the primary significance of the term in the minds of the consuming public is not the product but the producer. Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73; Mastercrafters Clock & Radio Co. v. Vacheron & Constantin, etc., D.C.S.D.N.Y.1954, 119 F.Supp. 209, 213. Here, there was no such proof. Plaintiff's second cause of action must therefore fail.

In its third cause of action, plaintiff charges the defendants with unfair competition, alleging that the defendant United copied its design and label. Plaintiff therefore asserts that it may recover on this ground, even though its design patent and trade mark are both invalid.

■ The copying of an unpatented design does not in itself constitute unfair competition, and this is true even though the design is novel and beautiful and the original producer has advertised the product extensively. Charles D. Briddell, Inc. v. Alglobe Trading Corp., 2 Cir., 1952, 194 F.2d 416, 418; General Time Instruments Corp. v. United States Time Corp., supra.

■ Although in New York it is no longer necessary to show that a product has acquired a secondary meaning in order to maintain an action against the imitator, Upjohn Co. v. Schwartz, 2 Cir., 1957, 246 F.2d 254, 261; Joshua Meier Co. v. Albany Novelty Mfg. Co., 2 Cir., 1956, 236 F.2d 144, 148; Flint v. Oleet

Jewelry Manufacturing Co., D.C.S.D. N.Y.1955, 133 F.Supp. 459, 464; one must show that the imitator's actions are unfair "according to the principles recognized in equity". Santa's Workshop, Inc. v. Sterling, 1953, 282 App.Div. 328, 122 N.Y.S.2d 488, 489; Flint v. Oleet Jewelry Manufacturing Co., supra.

■■ In order to establish unfairness, one must show that the imitator is guilty of one of the following predatory practices: palming off, actual deception, or violation of plaintiff's property. In other words, in the absence of a valid patent or trade mark, a manufacturer whose product has not acquired a secondary meaning is entitled to relief against a competitor who copies his designs only if the competitor attempts to sell his goods as those of the original manufacturer. Norwich Pharmacal Co. v. Sterling Drug, Inc., 2 Cir., 1959, 271 F.2d 569; Barton Candy Corp. v. Tell Chocolate Novelties Corp., D.C.E.D.N.Y.1959, 178 F.Supp. 577. Plaintiff failed to establish either that its product "Poly Pitcher" had acquired a secondary meaning or that the defendants had attempted to sell their goods as those of plaintiff. Likewise, plaintiff failed to show that defendants were guilty of any unethical or unfair conduct in regard either to the design or to the label of plaintiff's product.

Plaintiff is not entitled to any relief on its third cause of action.

In their counterclaim defendants seek damages and attorney fees on the ground that plaintiff brought this action in bad faith and has been guilty of unfair competition. As to count 1, they also seek attorney fees pursuant to 35 U.S.C. § 285, which reads: "The court in exceptional cases may award reasonable attorney fees to the prevailing party."

■ Defendants failed to prove by a preponderance of the evidence that plaintiff was guilty of bad faith or harassment. The counterclaim is therefore denied.

2. Plaintiff's Exhibit L.

The law with reference to the allowance of attorney fees was well set out in the case of Park-In-Theatres v. Perkins, 9 Cir., 1951, 190 F.2d 137, 142, wherein the court stated:

"The exercise of discretion in favor of such an allowance should be bottomed upon a finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force, which makes it grossly unjust that the winner of the particular law suit be left to bear the burden of his own counsel fees which prevailing litigants normally bear."

In my view, the defendants have failed to show that any of the conditions which would justify the award of attorney fees exist here. The claim for attorney fees is therefore denied.

The foregoing opinion will serve in place of findings, in accordance with Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.