**Fernando M. RONCI, Defendant, Appellant,**

v.

**EASTERN PLASTICS CORP., Plaintiff, Appellee.**

**No. 7019.**

United States Court of Appeals First Circuit.

June 12, 1968.

Max Schwartz, Providence, R. I., with whom Leo M. Goldberg, Providence, R. I., was on the brief, for appellant.

Herbert B. Barlow, Jr., Providence, R. I., with whom Herbert B. Barlow, Providence, R. I., was on the brief, for appellee.

Before ALDRICH, Chief Judge, Mc-ENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

This is an action for a declaratory judgment by a plaintiff, Eastern Plastics Corp., charged with infringement of Ronci Patent No. 3,050,877, issued to the defendant Ronci on August 28, 1962. The district court, after trial, did not pass upon infringement, but declared the patent invalid for anticipation by Trela Patent No. 2,937,461, issued May 24, 1960, and for obviousness. 273 F.Supp. 854. Ronci appeals.

The patent, for use in the manufacture of high, narrow, plastic ladies' heels, is, essentially, for an elongated, cylindrical metal shank, capped with a flat head. The shank is to be driven through a hole in the narrow portion of the heel extending up into the more solid portion. Affixed to the cap, or, rather, molded around it, is an outer heel, or what is known as the tap or top-lift.[1] The device purports to perform two functions. The first, allegedly accomplished by the shank, is to reinforce or strengthen the thin portion of the heel, which breaks easily. The second is to attach the top-lift which, when the heel is narrow, affording only a small surface, is difficult to fasten adequately, or replace, by nailing or by an adhesive.[2] Neither of these functions is new. The reinforcement of heels by wooden or metal shafts, commonly called dowels, is of long standing. The attachment of the top-lift by a shaft running up into the heel was patented by Trela, among others. The court, considering first anticipation, found that

"beyond any reasonable doubt * * * the patent of Trela 2,937,461 is a complete answer to everything recited in the claims of the patent in suit." In doing so we hold the court committed two errors. It deprecated Ronci and exaggerated Trela.

As to Ronci the court found that the shank of Ronci was not taught to go far enough up the heel, as a result of which it could weaken the heel rather than reinforce it. This finding was based upon acceptance of the testimony of one of plaintiff's witnesses. We cannot say in this that the court was in error with respect to claims 1 and 2.[3] The accepted expert testified that if the shank stopped at a narrow part of the heel the stress would come there and the heel would break. He pointed out that in speaking simply of an "elongated" shank the patent did not teach any further extension, and that in his opinion one of the drawings might be interpreted as stopping at this particular place. Based on this testimony, which it summarized as being that "neither the specifications or the claims say anything as to the length of the shank," the court found that with respect to reinforcement Ronci "is pregnant with undue breadth as well as indefiniteness and vagueness * * *."

While this may well be so as to claims 1 and 2, it is not true as to claims 3, fn. 1, supra, or 4, which specify not merely an elongated shank, but describe it as "extending * * * through said narrow portion of said heel." This is not indefinite, and in the light of other

---

1. Claim 3 reads as follows: "3. A heel for a woman's shoe comprising a broad top heel-seat portion tapering to an elongated very narrow bottom portion to form a narrow high heel having a very narrow tread end, said heel having a central vertical hole extending from the tread end through said narrow portion, an elongated rigid reinforcing shank extending into said hole through said narrow portion of said heel, means for frictionally retaining said reinforcing shank in said hole, said reinforcing shank having an enlarged flat head, a tap for the tread end of said heel, said head being grooved and said tap being molded to said head."

2. It is also claimed that Ronci was inventive with respect to the shape of the head, or the joining of the head and the tap. We do not pursue this matter, but we suspect that if Ronci treads this road he may find difficulties with proof of infringement. Cf. Magrath v. Draper, 1 Cir., 1967, 384 F.2d 672, 674.

3. Ronci does not appeal with respect to claim 1. Claim 2, also, does not define the length of the shank.

language concerning reinforcement it is sufficient to meet the witness' objections.[4]

■■ We are equally unable to accept the court's findings as to Trela. In the first place, it found that "the Trela post * * * can be regarded as a reinforcing shank." Having in mind that the Trela post, or shank, is described to be of "resilient material such as metal or rubber," we cannot perceive how it could provide reinforcement when the objective is rigidity. We may take judicial notice that ladies' high heels are not meant to be flexible. We note, also, that nowhere in the patent does Trela speak of reinforcement.[5] It was even more conspicuous error for the court to compare Trela with Ronci in that the Trela post could readily be made "rigid" and longer. For the court to speak of Trela as anticipating under 35 U.S.C. § 102 because of the ease of such changes is not only a doubtful conception of anticipation, but it was contrary to the testimonial explanation of Trela, which pointed out the necessity of its post being flexible and short.

For both of these reasons the court's finding in Trela "without doubt complete response of each element of each claim of the Ronci patent" cannot stand.

The next question is the validity of the court's finding, based upon Trela, a further patent, and the prior art generally, that Ronci lacked invention in that it was obvious. 35 U.S.C. § 103. Plaintiff invokes the familiar rule that a finding must be accepted unless plainly erroneous. The difficulty, however, is to separate out the court's misconception. Where it felt, as it said, that Ronci was completely anticipated by Trela, and that Trela provided reinforcement while Ronci's teaching fell short in that respect, it could not fail to find Ronci obvious.

The court's opinion does not permit us to divorce the impermissible from other, possibly accurate, components of its analysis. The situation is comparable to a jury verdict where evidence of a persuasive nature has been erroneously admitted; it may be that the jury would have reached the same result without it, but nonetheless the verdict cannot stand. So, here, it may be that certain evidence referred to by the court, or other evidence, would, properly, have warranted a finding of obviousness, but the court had reached the goal already.

There must be a new trial with respect to claims 3 and 4, before which, presumably, the court will allow the motions to amend which its decision had rendered moot. In so saying we express no views as to the weight or effect of the evidence, so far as obviousness is concerned.

4. We are bound to remark that plaintiff's witnesses exhibited a tendency to make black white. Thus, after disposing of claims 1 and 2 because the reinforcing shank was not taught to be long enough, one witness, after conceding that claims 3 and 4 read "through the narrow portion," stated "It is believed that the word 'through' does not mean entirely through." In the light of the witness' criticism of the earlier claims because they did not require the shank to pass through the narrow portion of the heel, it is particularly difficult to understand why he believed that when this requirement was added it did not mean what it said.

Again, when it came to the question of the reinforcing effect of the Trela post discussed in fn. 5, infra, the witness admitted that all the drawings in Trela showed a bifurcated post, but testified that Trela was not limited to this be-

cause it was known in the art that one could have other kinds of posts, and that it was "within the purport of the disclosure to have a post that's not bifurcated." In so testifying the witness chose to disregard the fact that in Trela's single claim the post was described as "bifurcated."

5. We are not unmindful of the testimony of one of plaintiff's experts that Trela "has, depending upon the metal, it has a stiffening effect which could be interpreted as a reinforcing effect." We can only say that this expert's desire to support his side of the case caused him to overlook that Trela's specifications suggested rubber, or metal of equivalent flexibility. "Depending upon the metal," accordingly meant, depending on whether you use the metal specified, or some other.

The judgment of the district court is affirmed with respect to its invalidation of claim 2 of the patent, but it is vacated as to claims 3 and 4 and a new trial is ordered not inconsistent herewith. Costs to appellant.